```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                          :
JOSE RAMON PENA-ROSARIO,                  :
                    Petitioner,           :
                                          :      07 Civ. 1830 (DLC)
          -v-                             :
                                          :      OPINION AND ORDER
UNITED STATES OF AMERICA,                 :
                    Respondent.           :
                                          :
-----------------------------------------X
```

Appearances:

Pro se Petitioner:
Jose Pena-Rosario
#52180-054
FCI Estill
P.O. Box 699
Estill, South Carolina 29918

For the United States of America:
Sarah Y. Lai
Assistant United States Attorney
Southern District of New York
1 St. Andrew's Plaza
New York, New York 10007

DENISE COTE, District Judge:

On February 8, 2007, Jose Ramon Pena-Rosario ("Pena") filed a timely petition for a writ of habeas corpus. He seeks to set aside his conviction and sentence on drug charges following the entry of a plea of guilty in 2005. Pena asserts that his retained counsel Roy Kulcsar ("Kulcsar") provided ineffective assistance of counsel. For the following reasons, the petition is denied with the following exception: The parties will have an

1

opportunity to make further submissions on Pena's claim that Kulcsar failed to file a notice of appeal.

BACKGROUND

Pena led a heroin and cocaine distribution organization in New York City during the period December 2003 to April 2004. During its investigation of the organization, the Government intercepted and recorded over 8,000 conversations over Pena's telephone and a co-defendant's telephone during several months pursuant to court-ordered electronic surveillance.  In connection with arrests made on April 7, 2004, drug ledgers, heroin, and cash were seized.  The ledgers reflected over $1 million in drug transactions during a few months of time.

Pena was indicted on June 15, 2004, along with three others, as the lead defendant in a one-count indictment.  On June 21, following his arraignment, and after consultation with counsel, trial was set for February 7, 2005.[1]

On October 7, 2004, Pena was indicted in a superseding indictment ("Indictment") with one count of conspiracy to distribute and possess with intent to distribute between December 2003 and April 7, 2004, five kilograms or more of cocaine and one kilogram or more of heroin, in violation of Title 21, United States Code, Section 846.  On February 14,

---

[1]   The trial date was subsequently adjourned to February 22, 2005.

2

2005, Pena entered a plea of guilty to the Indictment pursuant to a plea agreement with the Government that included a waiver of his right to appeal or litigate any sentence of 293 months' imprisonment or less.  The stipulated guidelines range was 235 to 293 months, based on an offense level of 38 and criminal history category I.  The parties also stipulated that the offense involved at least three kilograms of heroin and fifty kilograms of cocaine, that Pena was a manager or supervisor in an offense that involved five or more participants,[2] and that he used a person less than eighteen years of age to commit the offense.  While the parties agreed that a departure from the guidelines range was not warranted, they reserved their right to make an application pursuant to 18 U.S.C. § 3553(a) for a non-guidelines sentence.

At the plea allocution, an interpreter assisted Pena and Pena was placed under oath.  Pena represented that he had had a sufficient opportunity to discuss the decision to plead guilty with his attorney and was satisfied with the representation that his attorney had given him.  In addition to explaining each of the rights he was waiving by entering a plea of guilty, the Court listed the penalties he faced.  These included a ten year mandatory minimum term of imprisonment and a maximum term of life imprisonment.  Pena was advised that no one could predict

---

[2]     The parties stipulated to a three-level role enhancement.

3


what sentence would be imposed upon him since the Court would only decide on a sentence after reading the Probation Department's Presentence Report and all of the other information presented in connection with sentence.  Pena was specifically advised that he could not withdraw his plea of guilty if his sentence was different than anyone had told him it might be.  He denied that he had been threatened or forced to plead guilty.

Pena was questioned in detail about the plea agreement.  He acknowledged that it had been translated to him before he signed it and that he had also discussed it with his attorney before signing it.  When asked if he believed that he understood the document, he answered "of course."  He also denied having any agreement with the Government about his plea or sentence other than what was contained in the executed plea agreement.  He acknowledged that by signing the agreement he had agreed that a sentence between 235 and 293 months in prison would be reasonable and that he had given up his right "to appeal or challenge or litigate" his sentence so long as the sentence imposed was not greater than 293 months.  Pena allocuted that he had agreed with and supervised five or more people, including a person younger than 18 years old, to distribute over one kilogram of heroin and over sixty kilograms of cocaine.

Following a failed effort to obtain a cooperation agreement from the Government, on May 17, 2006, Pena was sentenced

principally to 235 months in prison. In connection with the efforts to obtain a cooperation agreement, Pena had attended four proffer sessions with the Government, two before his plea of guilty and two after the entry of the plea.[3] The Government refused to extend a cooperation agreement because it concluded that Pena could not provide substantial assistance in connection with the prosecution of another.

At the sentencing proceeding, Pena was again assisted by an interpreter. An interpreter had previously translated the Presentence Report to Pena, Pena had discussed the report with Kulcsar, and Kulcsar indicated that they had no objections to it. The Presentence Report had arrived at the same calculation of the guidelines range as adopted by the parties in their plea agreement, and it recommended a sentence of 235 months in prison.

Kulcsar represented that his client had provided truthful information to the Government about his own criminal activities and those of "a couple of his loved ones" but that "unfortunately" Pena was "not able to complete a successful effort at cooperation because of matters beyond my client's ability to assist." The defendant declined to speak to the Court on his own behalf, other than to apologize. After

---

[3]   The Proffer Agreements which Pena executed are dated June 3 and October 29, 2004, August 3, 2005, and February 15, 2006.

sentence was imposed, the defendant was advised of his right to appeal, including the requirement that the notice of appeal be filed within ten days of the judgment of conviction.  The Court added, "I am required to advise you of those rights, but I should also advise you that you have largely given up your right to appeal through your entry of a plea and signing the plea agreement with the Government."

DISCUSSION

Pena challenges his conviction on the ground that Kulcsar did not provide effective assistance to him with respect to (1) the negotiation of and advice regarding the plea agreement's waiver of the right to appeal; (2) a violation of the Speedy Trial Act; (3) the filing of an appeal; (4) litigating the quantity of narcotics distributed; and (5) the failure to obtain a cooperation agreement, a non-guidelines sentence, or an adjustment under the safety valve provision of the law, 18 U.S.C. § 3553(f).

A criminal defendant asserting that counsel was constitutionally deficient must show that the lawyer's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  The standard of Strickland "is rigorous,

6

and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on [it]." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).  A criminal defendant's self-inculpatory statements made under oath at his plea allocution "'carry a strong presumption of verity,'" United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)), and "are generally treated as conclusive in the face of the defendant's later attempt to contradict them."  Adames v. United States, 171 F.3d 728, 732 (2d Cir. 1999).

I.  Waiver of Right to Appeal

Pena challenges the plea agreement's waiver of a collateral attack on his sentence with two separate arguments.  Pena argues first that Kulcsar did not advise him adequately that he was waiving his right to attack a sentence at or below 235 months in prison in executing the plea agreement.  He next contends that there existed an unwritten agreement with the Government that gave him the right to appeal his sentence and otherwise challenge it.  In connection with this latter point, Pena points to Kulcsar's reference at the end of the plea allocution to the Supreme Court decisions in Booker and Fanfan.  See United States v. Booker, 543 U.S. 220 (2005).

At the end of the plea allocution, Kulcsar explained that he had discussed those two Supreme Court decisions with Pena,

7

and also the facts that the sentencing guidelines were no longer mandatory and that he would be free at the time of sentence to make "other arguments" for the Court's consideration.  In response, the Court reviewed the text of page 3 of the plea agreement, which provided that "either party may seek a sentence outside of the stipulated guidelines range" based on 18 U.S.C. § 3553(a).  Kulcsar confirmed that that was the issue to which he was referring, and that Pena had accepted "that if the Court sentences within the guidelines range that that would be a reasonable sentence and would not afford us an opportunity to appeal."

Pena has not shown that Kulcsar failed to discuss the appeal waiver with Pena.  Pena swore at the time that he had entered his plea of guilty, that the plea agreement had been translated to him, that he discussed it with Kulcsar, and that he believed he understood it.  The written waiver of the right to appeal or litigate his sentence was discussed in detail with Pena by the Court, and he orally acknowledged the effect of the written waiver.  Similarly, there is no basis to find that any confusion could have arisen as a result of Kulcsar's reference to <u>Booker</u> and <u>Fanfan</u> at the end of that proceeding.  The Court immediately drew attention to the relevant passage in the plea agreement, and Kulcsar agreed that he was referring in his remarks to that very passage.

8

In any event, Pena has not identified any ground to find that the sentence imposed was not lawful, reasonable and appropriate.  Therefore, he has not identified any ground that he could have successfully used on appeal even in the absence of the waiver to obtain a different sentence.

Finally, Pena's argument that he had an unwritten agreement with the Government about his appeal rights can be swiftly rejected.  Pena denied at his plea that he had any agreement with the Government about his plea or sentence other than the written plea agreement.

## II.  Speedy Trial Act

Pena contends that Kulcsar should have moved to dismiss the Indictment based on an alleged violation of the Speedy Trial Act.  At a conference on June 21, 2004, the Court excluded time under 18 U.S.C. § 3161(h)(8)(A) until the trial date of February 7, 2005, to allow discovery to be made and evaluated by the defendant, to permit motion practice, and to give the parties an opportunity to prepare for trial.  Counsel had jointly suggested a February 2005 trial date and indicated that they had no objection to the exclusion of time.  Of the roughly eight months between indictment and the entry of the plea, only twelve days or so were not excluded.  This prospective exclusion of time was reasonable given the volume of wiretap evidence.  Pena has failed to show, therefore, that there was any violation of the

Speedy Trial Act.  18 U.S.C. § 3161; see also United States v. Adams, 448 F.3d 492, 503 (2d Cir. 2006).

Pena has also failed to identify any prejudice that he suffered from his counsel's failure to object to the exclusion of time or to make a motion seeking a quicker trial.  Given the volume of evidence, and Pena's desire to try to convince the Government to enter into a cooperation agreement with him, it strongly appears that it was in his interest to have an opportunity to review the discovery materials and/or negotiate an understanding with the Government.

III. Filing of an Appeal

Pena claims that he instructed Kulcsar to file a notice of appeal, and that Kulcsar failed to do so.  This claim, if true, would constitute ineffective assistance of counsel.  See Fernandez v. United States, 146 F.3d 148, 149 (2d Cir. 1998) (per curiam).  Pena's waiver of his rights under 28 U.S.C. § 2255 does not bar such a claim.  See Campusano v. United States, 442 F.3d 770, 775 (2d Cir. 2006) (claim of ineffective assistance based on failure to file a notice of appeal unaffected by plea agreement waiving right to appeal).

It is impossible to determine "conclusively" from Pena's petition whether he sought to have a notice of appeal filed.  Accordingly, pursuant to 28 U.S.C. § 2255, further submissions will be required and a hearing will be held if necessary.

IV.  Quantity of Narcotics

Pena contends that Kulcsar failed to explain to him during plea negotiations that the sentencing range would be based in part on the agreement that he had conspired to distribute over 500 grams of cocaine.  He also asserts that Kulcsar should have pursued a Fatico hearing to contest the quantity of drugs or negotiated the drug quantity more effectively with the Government.  See United States v. Fatico, 579 F.2d 707 (2d Cir. 1978).

Pena does not explain how he was prejudiced by this alleged failure of counsel to explain the implications for guidelines' purposes of the distribution of 500 grams of cocaine.  It is undisputed that Pena's organization distributed substantial quantities of cocaine.  The plea agreement, which Pena acknowledged had been translated to him and which he believed he understood, described a sentencing guidelines range based in part on an offense involving at least three kilograms of heroin and fifty kilograms of cocaine.  At his allocution, Pena asserted that he had conspired to distribute over one kilogram of heroin and sixty kilograms of cocaine.

As for Kulcsar's failure to contest the quantity of drugs associated with Pena's organization, Pena has again failed to show any prejudice.  He does not dispute that he accurately described quantities of drugs distributed by his organization at

11

the time that he entered his plea.  Those quantities support the offense level on which the sentence was based.  Moreover, Pena chose to seek a cooperation agreement with the Government, and in that connection had attended four proffer sessions before the date of sentence.  Based on the terms of the written proffer agreements which he executed at each session, the Government would have been entitled at sentence to offer his admissions during those sessions if he had chosen to contest the quantities listed in his plea agreement.  Pena does not suggest that what he told the Government during his efforts to offer his cooperation and receive the benefits of a cooperation agreement, would have resulted in a sentence below that which he received.  Indeed, the Government represents that if Pena had chosen to litigate the quantity of drugs his organization distributed, it would have opposed the one-level reduction under the sentencing guidelines for a timely acceptance of responsibility and offered evidence that he had been involved with drug quantities that were "higher" than those described in the plea agreement.  The claims based on the quantity of narcotics distributed must, therefore, be denied.

V.   Leniency at Sentencing

Pena appears to contend that Kulcsar failed to consider Booker, and the fact that the guidelines are not advisory.  That assertion is flatly contradicted by Kulcsar's statement on the

record at the end of the plea allocution.  In addition, the plea agreement acknowledged Pena's right to seek a non-guidelines sentence.

Pena next contends that his attorney was ineffective since he did not receive a cooperation agreement from the Government. The proffer agreement that Pena executed each of the four times he met with the Government in an effort to enter into a cooperation agreement included the statement that "The Government makes no representation about the likelihood that any such [cooperation] agreement will be reached in connection with this proffer."  The decision whether to offer a cooperation agreement to a defendant is a decision made by the Government alone.  See United States v. Khan, 920 F.2d 1100, 1104-05 (2d Cir. 1990).  Pena has not identified anything that Kulcsar did or that he failed to do that contributed to the Government's decision not to enter into a cooperation agreement with Pena. As the Government explains, Pena failed to provide substantial assistance toward the prosecution of others, particularly his suppliers.  Further, under Strickland, Pena has not shown prejudice because he has failed to allege that he would not have pleaded guilty without the guarantee of a cooperation agreement from the Government.  See United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005).

Pena further argues that Kulcsar was ineffective because he did not argue for a non-guidelines sentence under United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006), which held that a sentencing judge can consider a defendant's attempts to cooperate with the Government as part of its inquiry under 18 U.S.C. § 3553(a).  Id. at 33.  Contrary to Pena's assertions, Kulcsar provided "reasonable professional assistance," Strickland, 466 U.S. at 689, in this regard, by describing Pena's cooperation with the Government at sentencing as one of the factors to be considered by the Court.  Kulcsar did not cite Fernandez by name, but his argument clearly alerted the Court to the relevant facts to be considered under § 3553(a).  Moreover, Pena has failed to establish prejudice under Strickland with respect to this particular argument, as he has not explained how additional evidence concerning the scope of his cooperation with the Government would have eventuated in a non-guidelines sentence.  Accordingly, this argument fails.

Finally, to the extent Pena argues that Kulcsar was ineffective in failing to win relief under the safety valve provision of the sentencing guidelines, U.S.S.G. § 5C1.2(a), this argument is foreclosed by Pena's statutory ineligibility for such relief as an "organizer, leader, manager, or supervisor of others in the offense," U.S.S.G. § 5C1.2(a)(4).  Pena's

arguments concerning Kulcsar's representation of him at sentence must therefore be rejected.

CONCLUSION

Each of the claims in the petition is denied with the exception of the claim that Pena asked his attorney to file a notice of appeal.

SO ORDERED:

Dated:   New York, New York
         December 10, 2007

                                            DENISE COTE
                            United States District Judge

15

Copies sent to:

Jose Pena-Rosario
#52180-054
FCI Estill
P.O. Box 699
Estill, South Carolina 29918

Sarah Y. Lai
Assistant United States Attorney
Southern District of New York
1 St. Andrew's Plaza
New York, New York 10007

Roy R. Kulcsar
27 Union Square West
New York, New York 10003